**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

|  |  |
|---|---|
| **MECENE ANESTAL,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  CASE NO. 9:21-CV-81442-AMC |
| **THE BOCA RATON, LLC,** | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS WITH SUPPORTING MEMORANDUM OF LAW**

Defendant THE BOCA RATON, LLC ("Defendant"), by and through the undersigned counsel and pursuant to Rules 12(b)(1) and 6 of the Federal Rules of Civil Procedure, the Federal Arbitration Act, 9 U.S.C. §1 et. seq. ("FAA") and Local Rule 7.1, hereby moves this Honorable Court to compel Plaintiff MECENE ANESTAL ("Plaintiff") to: (1) arbitrate his claims in this action in accordance with the Arbitration Agreement he entered into as a condition of his employment and from which his claims arise; and (2) dismiss or stay this lawsuit.

**STATEMENT OF FACTS**

Plaintiff began working at Boca Raton Resort & Club (the "Resort") in Boca Raton, Florida in 1997. *See the Declaration of Maria Burns Aladro in Support of Defendant's Motion to Compel Arbitration at ¶ 3.*[1] On September 1, 2013, Hilton Worldwide, Inc. ("Hilton") took over management of the Resort. [Burns Dec. at ¶ 3]. In order to be hired by Hilton and continue working at the Resort, prior to the transition, Plaintiff was asked to review and sign certain

---

[1] The Declaration of Maria Burns Aladro in Support of Defendant's Motion to Compel Arbitration is being filed contemporaneously herewith, and is hereafter referenced as "Burns Dec."

1

onboarding documents including, but not limited to, Hilton's Team Member Handbook, Human Resources Global Policies and standalone Agreement Re At Will Employment and Arbitration ("Arbitration Agreement").  [Burns Dec. at ¶ 3 and Burns Dec. at Ex. 1 and 2].  Plaintiff executed acknowledgements of the onboarding documents and signed his Arbitration Agreement on July 18, 2013.  [Burns Dec. at Ex. 1 and 2].

The Arbitration Agreement that Plaintiff signed provides as follows:

> **The Company and I further agree and acknowledge that final and binding arbitration shall be the exclusive forum to hear and decide any dispute the Company and me**, except for claims for Workers' Compensation, Unemployment Compensation, claims brought to secure rights granted under the terms of a collective bargaining agreement, or any other claim that is non-arbitrable under applicable state or federal law. Thus, **the Company agrees to bring any claim it may wish to assert against me only through arbitration, and I agree to bring any claim I may wish to assert against the Company only through arbitration**. Except the claims carved out above, **this Agreement includes all common-law and statutory claims, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, unfair competition or misappropriation of trade secrets, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected status which may be brought under applicable state or federal laws**. I understand that I am giving up no substantive rights, and this Agreement governs forum.

[Burns Dec. at Ex. 1].  (Emphasis added).  The Arbitration Agreement also provides in conspicuous, bold language, the following:

> **BY SIGNING THIS AGREEMENT, THE COMPANY AND I ACKNOWLEDGE THAT THE RIGHT TO A COURT TRIAL AND TRIAL BY JURY IS OF VALUE, AND WE KNOWINGLY AND VOLUNTARILY WAIVE SUCH RIGHT FOR ANY DISPUTE SUJBECT TO THE TERMS OF THIS AGREEMENT.**

[Burns Dec. at Ex. 1].

Plaintiff signed the Arbitration Agreement as an explicit condition of his employment with Hilton and his continued employment at the Resort. [Burns Dec. at ¶ 3]. Plaintiff printed his full name, signed his full name, and dated the Arbitration Agreement. [Burns Dec. at Ex. 1]. Thereafter, Plaintiff continued his employment at the Resort. [Burns Dec. at ¶ 4]. During Plaintiff's employment, Hilton's successor-in-interest and wholly owned subsidiary, Waldorf=Astoria Management LLC, assumed management of the Resort, including employing the Resort's Team Members, like Plaintiff. [Burns Dec. at ¶ 4]. Effective January 1, 2020, Waldorf=Astoria Employer LLC, successor-in-interest and affiliate of Hilton and Waldorf=Astoria Management LLC, became the employer at the Resort.[2] [Burns Dec. at ¶ 4]. Effective September 30, 2020, The Boca Raton LLC, successor-in-interest to Hilton, Waldorf=Astoria Management LLC and Waldorf=Astoria Employer LLC, became the employer at the Resort. [Burns Dec. at ¶ 4].

Choosing to ignore his Arbitration Agreement, Plaintiff filed the instant lawsuit in the United States District Court for the Southern District of Florida, alleging race, religion and national origin discrimination. Plaintiff's claims arise out of the time he was employed at the Resort by Hilton and the time Defendant has been the employer at the Resort. [D.E.1]. As discussed below, Plaintiff's should be compelled to arbitrate his claims pursuant to the binding Arbitration Agreement that he entered into as a condition of his employment, and this action should be dismissed or, alternatively, stayed.

---

[2] Waldorf=Astoria Employer LLC and Waldorf=Astoria Management LLC will be referred to as the "Hilton subsidiaries."

## **MEMORANDUM OF LAW**

### I.     The Federal Arbitration Act ("FAA") and Public Policy Favor the Enforcement of Arbitration Agreements

The FAA broadly provides: "A written provision . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress intended to overcome past judicial reluctance to enforcing arbitration agreements by placing them on equal footing with other contracts and by establishing a strong federal policy in favor of arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA, and the federal policy favoring arbitration that it embodies, require courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Federal policy favors arbitration over litigation and requires that all doubts be resolved in favor of arbitration. *Seaboard Coast Line R. R. v. Trailer Train Co.,* 690 F.2d 1343, 1348 (11th Cir. 1982). *See also Nicor Int'l Corp. v. El Paso Corp.,* 292 F. Supp. 2d 1357, 1371 (S.D. Fla. 2003); *Joyner v. Peerless Indem. Ins. Co.*, 2010 U.S. Dist. LEXIS 58702, *2 (M.D. Fla. June 10, 2010). Absent violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause. *Telecom Italia, SPA v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1114 (11th Cir. 2001). There is also a "strong public policy in the State of Florida favoring arbitration." *Nicor Int'l Corp. v. El Paso Corp.,* 318 F. Supp. 2d 1160, 1166 (S.D. Fla. 2004). "The policy in favor of arbitration in the State of Florida is unmistakable, long-standing, and supported by ample case law, and is not based upon mere judicial notions of public interest." *Id.*

Under the FAA, a court must enforce an agreement to arbitrate if: (1) "the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract

4

principles;" and (2) "the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.,* 544 F.3d 1192, 1195 (11th Cir. 2008). *See also Beard v. Fortiva Fin., LLC*, 2016 U.S. Dist. LEXIS 18993, *1-2 (M.D. Fla. Feb. 17, 2016). *Axos Clearing, LLC v. Reynolds,* 2019 U.S. Dist. LEXIS 149622 (S.D. Fla. Aug. 30, 2019). "A court called upon to determine whether arbitration is appropriate […] must determine (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Home Quality Mgmt. v. Ace Am. Ins. Co.,* 381 F. Supp. 2d 1363, 1365 (S.D. Fla. 2005). *See also Jones v. Sallie Mae, Inc.,* 2013 U.S. Dist. LEXIS 170968 (M.D. Fla. Sept. 20, 2013); *Chalkiadakis v. Keiser Sch., Inc.,* 2012 U.S. Dist. LEXIS 196152, *28 (S.D. Fla. Aug. 31, 2012).

In this case, Defendant respectfully submits that there is a valid agreement to arbitrate, and that Plaintiff cannot satisfy his *affirmative duty* to show why the Court should not compel arbitration. *Sims v. Clarendon National Insurance Company*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2002). *Axos Clearing, LLC,* 2019 U.S. Dist. LEXIS 149622, at*7 (noting that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration). Accordingly, Defendant respectfully asks this Honorable Court to Compel Arbitration and stay or dismiss the proceedings.

**II.     The Arbitration Agreement is Valid and Enforceable Between Plaintiff and Hilton**

A. A Valid Written Agreement to Arbitrate Exists

As stated above, the existence of a valid agreement to arbitrate is determined by reference to "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Florida, in order for there to be a valid written agreement to arbitrate, there must be an offer, acceptance, consideration and sufficient

specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004); *SCG Harbourwood, LLC v. Hanyan*, 93 So.3d 1197, 1200 (Fla. 2d DCA 2012).

Here, there was clearly an offer and acceptance of the Arbitration Agreement. As a condition of being hired by Hilton and continuing to work at the Resort after the management change in 2013, Plaintiff reviewed, signed and dated Hilton's onboarding documents including the standalone Arbitration Agreement. [Burns Dec. at ¶ 3].

There was also sufficient consideration for the Arbitration Agreement. After signing the Arbitration Agreement, Plaintiff was hired by Hilton and continued working at the Resort. [Burns Dec. at ¶ 3]. He accepted the benefits of such employment with the knowledge that he had agreed to arbitrate any claims they he may have arising out of his employment with Hilton.

Signing the Agreement was a condition of his employment with Hilton. [Burns Dec. at ¶ 4]. Had Plaintiff failed or refused to execute his Arbitration Agreement, he would not have been hired by Hilton, nor would he have been permitted to continue working at the Resort. Although Hilton was under no obligation to actually hire Plaintiff, the fact that he executed the Arbitration Agreement, along with the extension of employment and Plaintiff's acceptance of that employment, constitutes sufficient consideration to support the Plaintiff's agreement to arbitrate his disputes.

Plaintiff and Hilton also agreed to a number of promises in the Arbitration Agreement, which provide additional legal consideration. The parties agreed to mutual and reciprocal promises including, but not limited to, both parties agreeing to certain arbitration procedures, including the selection of the arbitrator, the location of the arbitration, the rules and laws under which the arbitration would proceed, the entitlement to costs and legal fees, and the form of the award to be issued by the arbitrator. [Burns Dec. at Ex. 1]. Hilton also agreed to pay all costs

uniquely attributable to arbitration, including the costs of the arbitrator.  [Burns Dec. at Ex. 1].

These mutual promises are all consideration supporting the Arbitration Agreement. [Burns Dec. at Ex. 1].

Finally, the essential terms of the Arbitration Agreement were sufficiently definite.  The Arbitration Agreement explained that it covered *all* arbitrable disputes arising out of, or related to, Plaintiff's employment with Hilton at the Resort:

> [T]he Company agrees to bring any claim it may wish to assert against me only through arbitration, and I agree to bring any claim I may wish to assert against the Company only through arbitration. […] [T]his Agreement includes all common-law and statutory claims, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, unfair competition or misappropriation of trade secrets, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected status which may be brought under applicable state or federal laws. I understand that I am giving up no substantive rights, and this Agreement governs forum.

[Burns Dec. at Ex. 1].  The Arbitration Agreement specified that the agreement extended to any claims related to his employment, such as those for alleged "violation of laws forbidding discrimination [,,,] on the basis of race, […] religion, [and] national origin." [Burns Dec. at Ex. 1]. Courts have consistently found that arbitration agreements with broad, unambiguous language support a finding of sufficiently definite terms.  *See AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (The "presumption [in favor of arbitrability] is particularly applicable where the [arbitration] clause is . . . broad.").  For the reasons stated above, the Arbitration Agreement is valid and enforceable contract between Hilton and Plaintiff.

B. <u>An Arbitrable Issue Exists and the Claims Fall Within the Scope of the Arbitration Agreement</u>

Any ambiguities or doubts as to the scope of an arbitration agreement are to be resolved in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (finding that any doubt concerning scope of arbitrable issues should be resolved in favor of arbitration, whether there is a problem with the construction of contract language or an allegation of waiver, delay or a like defense to arbitrability). "As a matter of contract law, the scope of an arbitration agreement depends on the intent of the parties." *Perera v. H&R Block,* 914 F. Supp. 2d 1284, 1287-88 (S.D. Fla. 2012). Courts should look to the plain meaning of the contract when interpreting same. *Tranchant v. Ritz Carlton Hotel Co., LLC,* 2011 U.S. Dist. LEXIS 35099, *8 (M.D. Fla. March 31, 2011).

As noted above, Plaintiff agreed to arbitrate "any claim [he] may wish to assert against the Company" including claims related to his employment, such as those for alleged "violation of laws forbidding discrimination […] on the basis of race, […] religion, [and] national origin." [Burns Dec. at Ex. 1]. All of Plaintiff's claims of alleged race, religion and national origin discrimination arise out of, or relate to, his employment, and fall squarely within the scope of the Arbitration Agreement. [D.E. 1].

C. <u>The Right to Arbitration Has Not Been Waived</u>

The Eleventh Circuit Court of Appeals has established a two-prong test to determine if a party has waived its right to arbitrate. *Ivax Corp. v. B. Braun of America,* 286 F.3d 1309, 1315-16 (11th Cir. 2002). "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice

to the opposing party." *Morewitz v. West of England Ship Owners Mut. Protection and Indemnity Assoc.,* 62 F.3d 1356, 1366 (11th Cir. 1995).

Here, Defendant has not yet answered the Complaint or participated – much less substantially participated – in the litigation process. Accordingly, Defendant has not waived its right to arbitrate and there is no need to further examine this prong of the test.

### III. Defendant May Enforce the Arbitration Agreement

Defendant respectfully asserts that it may enforce the Arbitration Agreement between Plaintiff and Hilton, as its successor-in-interest, and current employer at the Resort. The question of whether a non-signatory can enforce or be subjected to an arbitration agreement is governed by state law. *Alttrix, LLC v. Mobileware, Inc*., 2017 U.S. Dist. LEXIS 205870, *29 (S.D. Fla. Dec. 13, 2017). Florida and federal courts have recognized that a non-signatory to a contract may invoke an arbitration clause therein under a theory of equitable estoppel, under agency or related principles, or where the non-signatory is an intended third-party beneficiary of the contract." *Liles v. Ginn-La West End, Inc*., 631 F.3d 1242, 1256 (11th Cir. 2011); *Mims v. Global Credit & Collection Corp*., 803 F.Supp.2d 1349, 1354 (S.D. Fla. Aug. 12, 2011); *Koechli v. BIP Int'l, Inc*., 870 So.2d 940 (Fla. 1st DCA 2004). In Florida, these theories may include (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel. *Ocean M, Ltd. v. Dorr*, 2019 U.S. Dist. LEXIS 26122, *13-14 (S.D. Fla. Feb. 15, 2019). Federal courts are generally more willing to estop a signatory from avoiding arbitration with a non-signatory than to estop a non-signatory from avoiding arbitration. *Id.* at *8.

Defendant asserts that it is permitted to enforce the Arbitration Agreement under the theory of equitable estoppel. A non-signatory defendant may enforce an arbitration clause against a signatory plaintiff when (1) the signatory to a written agreement containing an arbitration clause

must rely on the terms of the written agreement in asserting its claims against the non-signatory, or (2) there are allegations of concerted actions by both a non-signatory and one or more of the signatories to the contract. *Allscripts Healthcare Solutions, Inc. v. Pain Clinic of Northwest Fla., Inc.*, 158 So.3d 644, 646 (Fla. 3d DCA 2014). *See also Marshall, Amaya & Anton v. Arnold-Dobal*, 76 So.3d 998, 1004 (Fla. 3d DCA 2011). *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999). The second instance warrants equitable estoppel when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories of the contract." *Arnold-Dobal*, 76 So.3d at 1044. *See also Kolsky v. Jackson Square, LLC,* 28 So.3d 965, 969 (Fla. 3d DCA 2010); *Armas v. Prudential Sec., Inc.,* 842 So.2d 210, 212 (Fla. 3d DCA 2003).

Here, the allegations that Plaintiff makes in the Complaint against Defendant for alleged discrimination and retaliation arising out of his employment at the Resort are intertwined with those he has made against his prior employers at the Resort, Hilton which is a signatory of the Agreement to Arbitrate, and the Hilton subsidiaries.

Plaintiff's allegations span the entirety of his employment at the Resort (under Hilton, the Hilton subsidiaries and Defendant).[3] Plaintiff further claims that he was subjected to discriminatory comments and retaliatory actions dating back to 2019 and into early 2020, when the Hilton subsidiaries were the employers at the Resort.[4] [D.E. 1 at ¶ 15-20; Burns Dec. at ¶ 4]. He also alleges that he was laid off in February 2020 "purportedly" due to COVID-19 and that he filed his first Charge of Discrimination in March 2020.[5] [D.E. 1 at ¶ 22]. While Plaintiff claims that Defendant laid him off, he was employed by a Hilton subsidiary at the time of his layoff.

---

[3] For example, he claims he has been qualified for his position during his entire period of employment at the Resort. [D.E 1 at ¶ 11-13].
[4] As explained above, Plaintiff entered into the arbitration agreement as a condition of his employment with Hilton.
[5] The March 2020 Charge was filed against Waldorf=Astoria Management LLC. [Burns Dec. at ¶ 5].

[Burns Dec. at ¶ 4.] The Complaint further alleges that when Defendant began calling employees back to work from layoff status in October 2020, Defendant did not call Plaintiff back due to discriminatory and retaliatory reasons. [D.E. 1 at ¶ 23]. The retaliation he alleges against Defendant is based on the alleged protected activity he engaged in while employed by the Hilton subsidiaries. Similarly, the discrimination claim against Defendant is based on the same alleged discriminatory animus from his employment with the Hilton subsidiaries. Plaintiff alleges that he then filed a second Charge of Discrimination in March 2021. [D.E. 1 at ¶ 24]. This time he filed the Charge of Discrimination against Defendant.[6] The Complaint therefore includes (1) the allegations he made against Hilton (signatory to the Agreement to Arbitrate) and the Hilton subsidiaries in the first Charge, and (2) the allegations he made against Defendant (which he initially made against a Hilton subsidiary) in the second Charge.

Instead of naming signatory-Hilton or the Hilton subsidiaries in this lawsuit, Plaintiff chose to name The Boca Raton, LLC for alleged actions taken during his employment with the Hilton entities, which Plaintiff believes culminated in Defendant's alleged actions against him. Further, instead of naming Hilton or the Hilton subsidiaries, Plaintiff opted to solely sue Defendant for the allegations arising out of his employment at the Resort, which he expressly agreed to arbitrate as a condition of his continued employment at the Resort. [See Burns Dec. at ¶ 4; Burns Dec. at Ex. 1]. Plaintiff, and his allegations, have treated Defendant as a joint entity of signatory-Hilton (and prior successors-in-interests, the Hilton subsidiaries) with congruent interests. Therefore, Plaintiff's claims fall under the Agreement. *See Giraud v. Woof Gang Bakery, Inc.,* 2018 U.S. Dist. LEXIS 75133, *12-13 (M.D. Fla. April 4, 2018).

---

[6] He initially filed the Charge against Hilton but then amended it to file against Defendant. [Burns Dec. at ¶ 5].

Plaintiff attempts to thwart and make meaningless the strong federal and Florida public policy in favor of arbitration by suing a non-signatory for actions that are the same–or at the very least intertwined–as a signatory, should not be accepted. Defendant respectfully asserts this Court should estop Plaintiff from avoiding arbitration, enforce the Arbitration Agreement, and dismiss, or alternatively, stay these proceedings.

### IV.   Plaintiff's Claims Should be Dismissed, or in the Alternative, Stayed

The FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that there is an enforceable arbitration agreement. *Lambert*, 544 F.3d at 1195. *See also Beard*, 2016 U.S. Dist. LEXIS 18993 at *1-2.  Since all of Plaintiff's claims are subject to arbitration, Defendant submit that dismissal rather than a stay is appropriate. *See Chapman v. Lehman Bros., Inc.*, 279 F. Supp. 2d 1286, 1290 (S.D. Fla. 2003) (granting defendant's motion to dismiss after determining plaintiffs' claims were subject to arbitration); *Walthour v. Chipio Windshield Repair, LLC*, 944 F. Supp. 2d 1267, 1279 (N.D. Ga. 2013) (granting a motion to dismiss and declining to stay proceedings, holding that the parties may file a separate civil action in the event court action is necessary to resolve issues arising out of arbitration).

### CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Counsel for Defendant has conferred with counsel for Plaintiff regarding this Motion. Counsel for Plaintiff responded that Plaintiff does not agree to arbitration and opposes this Motion.

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant this Motion and enter an Order (i) compelling Plaintiff to pursue his claims in arbitration pursuant to his Arbitration Agreement; (ii) dismissing, or in the alternative, staying the proceedings; (iii) granting any other such relief that this Court deems just and proper.

DATED this 1st day of November, 2021.

                                             Respectfully submitted,

                                             JACKSON LEWIS P.C.
                                             390 North Orange Avenue, Suite 1285
                                             Orlando, Florida 32802-3389
                                             Telephone:    (407) 246-8440
                                             Facsimile:    (407) 246-8441

                                             By:    */s/ Lin J. Wagner*
                                                       Tasos C. Paindiris
                                                       Florida Bar No. 0041806
                                                       Tasos.paindiris@jacksonlewis.com

                                                       Lin J. Wagner
                                                       Florid Bar No. 0093138
                                                       Lin.wagner@jacksonlewis.com

                                    *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on this 1st day of November, 2021, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Michelle Cohen Levy, Esq., The Law Office of Michelle Cohen Levy, P.A., 4400 N. Federal Highway, Lighthouse Point, FL 33064.

                                                       */s/ Lin J. Wagner*
                                                          Lin J. Wagner

4873-4744-0640, v. 5